## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

United States of America,

              Plaintiff,

v.

Jeffrey A. Gardner,

              Defendant.

**Criminal No. 13-35 (PJS/SER)**

**<u>REPORT & RECOMMENDATION</u>**

---

Robert M. Lewis, Esq., United States Attorney's Office, 316 North Robert Street, Suite 404, Saint Paul, Minnesota 55101, for Plaintiff.

James E. Ostgard, II, Esq., Ostgard Law Office, P.O. Box 582536, Minneapolis, Minnesota 55458, for Defendant.

---

STEVEN E. RAU, United States Magistrate Judge

The above-captioned case came before the undersigned on Defendant Jeffrey A. Gardner's ("Gardner") Motion to Suppress Evidence Obtained as a Result of Search and Seizure ("Motion to Suppress") [Doc. No. 38]. This matter was referred for the resolution of the issues raised in Gardner's Motion to Suppress pursuant to 28 U.S.C. § 636(b)(1)(B)–(C) and District of Minnesota Local Rule 72.1. For the reasons stated below, the Court recommends that the Motion to Suppress be denied.

## I.      BACKGROUND

On February 19, 2013, Gardner was indicted with four counts of mail fraud in violation of 18 U.S.C. § 1341, one count of conspiracy to commit mail fraud in violation of 18 U.S.C. § 371, one count of conspiracy to commit mail and wire fraud in violation of 18 U.S.C. § 1349,

and one count of monetary transactions in criminally derived property in violation of 18 U.S.C. § 1957. (Indictment) [Doc. No. 1].

Gardner filed his Motion to Suppress on January 16, 2015. He alleges that there were no grounds for any warrantless searches, and, to the extent any searches were conducted pursuant to a search warrant, the search warrant was inadequate and permitted a general search. (Mot. to Dismiss). Gardner initially requested oral argument, however, he and the United States of America (the "Government") jointly requested that the hearing be cancelled. (*Id.*); (Stipulation Regarding Pretrial Mots.) [Doc. No. 41]. Upon review of the submissions, the Court agreed. (Text Only Entry Dated Feb. 18, 2015) [Doc. No. 46]. After supplemental briefing from the parties, Gardner's Motion to Suppress and non-dispositive pretrial motions were taken under advisement on February 18, 2015. (*Id.*).[1]

Through his supplemental briefing, Gardner narrowed his Motion to Suppress to challenge the search warrants executed on or around December 16, 2008, at a storage unit he rents at Northside Storage, at the offices of his company, Assured Financial ("Assured"), and his residence in Shoreview, Minnesota. (Mem. in Supp. of Mot. to Suppress Evidence Obtained in Search, "Gardner's Mem. in Supp.") [Doc. No. 44 at 1]. All three search warrants were based on the affidavit of Investigator Joe Hunt (the "Hunt Affidavit"). (*Id.*).[2]

---

[1]     Gardner's non-dispositive pretrial motions were addressed in a separate order. *See* (Order Dated Feb. 23, 2015) [Doc. No. 48].

[2]     The Government submitted redacted versions of the three search warrants at issue. *See* (Gov't's Supplemental Resp. to Def.'s Mot. to Suppress, "Gov't's Suppl. Resp.") [Doc. No. 45 at 2 n.1]. Because only one affidavit is at issue, and because that affidavit is the same for all three search warrants, the Court refers to that affidavit as the "Hunt Affidavit." It is located on pages Application 1-2 to Application 1-7 of each exhibit. *See* (Ex. 1, Ex. 2, Ex. 3, Attached to Gov't's Suppl. Resp.) [Doc. Nos. 45-1, 45-2, 45-3]. Also, because the Court only refers to the application portion of the search warrant, the pages the Court cites only refer to the application, unless otherwise specified.

## II.    FACTS[3]

The Hunt Affidavit describes a "builder buyout" scheme where a builder can sell excess homes to pay off its financial obligations to its construction lender; this scheme involved the surreptitious routing of money from the seller (builder) to the buyer. The participants provided the buyer an amount greater than the down payment so that the buyer immediately profited anywhere from $5,000 to $25,000 per transaction.

The scheme is described in detail using a residence in Maple Lake, Minnesota as an example (the "Property"). The broad strokes are as follows: The construction lender, Assured, loaned money to the builder. The builder sold the Property to the buyers, Arden and Sheila Larsen (the "Larsens"), using broker Dale R. Wurzinger ("Wurzinger") of Split Rock Realty as the facilitator. Washington Mutual was the mortgage lender that relied on the information provided by the Larsens to issue a mortgage. Compass Title closed the purchase and wired a total of $59,120: $41,335 to Split Rock Realty and $17,785 to Split Rock Properties. The Property's settlement statement does not reflect these amounts.[4] Instead, the settlement statement lists the amount Split Rock Realty received as $38,335, described as a commission, and the amount Split Rock Properties received as $20,785, described as "Subcontractor Payoff-Const Con." Split Rock Realty then wired $38,335 to Options Plus Realty, who was listed on the settlement statement but did not receive a commission payment from Compass Title. Options Plus Realty, in turn, wired $36,840 (the amount of its payment from Split Rock Realty, less a $1,495 commission for Wurzinger) to the Larsens. Assured does not list Split Rock Properties on its

---

[3]    The entirety of this section is based on information found in the Hunt Affidavit, at pages 1-3 and 1-4.

[4]    In the Hunt Affidavit, the settlement statement is referred to as the property's "HUD."

3

loan payoff report.[5] Washington Mutual, the mortgage lender, was not aware of the transactions described here, and the transactions contradict the statements made on the Property's settlement statement. The Hunt Affidavit states that "[t]hese actions constituted deliberate and material misstatements[,] which were relied upon by a mortgage lender and meet the requirements for establishing mortgage fraud. They also demonstrate that the [settlement statement] was knowingly signed using false information." (citation omitted).

## III.   DISCUSSION

Gardner argues that the Hunt Affidavit lacks probable cause, the good faith exception does not apply, and the search warrant permits a general search. (Gardner's Mem. in Supp.). The Court considers each argument in turn.

### A.   Probable Cause

#### 1.   Legal Standard

In determining whether probable cause exists to issue a search warrant, a court considers the information that was before the issuing judicial officer and affords "great deference to the issuing judge's determination." *United States v. Smith*, 581 F.3d 692, 694 (8th Cir. 2009). Where no evidence outside of the affidavit was submitted to the issuing judge, "only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005) (internal quotation marks omitted). Probable cause exists when the likelihood of finding evidence of a crime in a certain place is fairly probable. *United States v. Chrobak*, 289 F.3d 1043, 1046 (8th Cir. 2002). "Probable cause . . . does not require evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect

---

[5]     Although not explicitly stated, the Hunt Affidavit suggests Split Rock Properties paid off Assured's construction loan.

committed a crime." *United States v. Donnelly*, 475 F.3d 946, 954 (8th Cir. 2007) (internal quotation marks omitted).

"[T]here must be evidence of a nexus between the contraband and the place to be searched before a warrant may properly issue[.]" *United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000) (citation omitted). "[A]n officer executing a search warrant may rely in the permissibility of the issuing judge's inference that such a nexus exists when that inference has 'common sense appeal[.]'" *United States v. Perry*, 531 F.3d 662, 665 (8th Cir. 2008) (citation omitted). In other words, "[p]robable cause exists when the facts and circumstances . . . are sufficiently trustworthy to warrant a person of reasonable caution to believe that a crime has been committed and that seizable property from that crime may be located at a particular place or on a person to be searched." *United States v. Gipp*, 147 F.3d 680, 687 (8th Cir. 1998). "Judges may draw reasonable inferences from the totality of the circumstances in determining whether probable cause exists to issue a warrant . . . ." *United States v. Summage*, 481 F.3d 1075, 1078 (8th Cir. 2007).

## 2.    Analysis

Gardner argues that the affidavit does not establish probable cause that evidence that Gardner committed the described crimes would be found at the locations where the search warrants were executed. (Gardner's Mem. in Supp. at 1). Specifically, he argues that the affidavit does not identify his involvement in activities "not . . . properly recorded or disclosed on HUD forms and closing statements" and that, Wurzinger, who cooperated with authorities initially, did not identify Gardner as a participant in the schemes or as an individual with knowledge of the schemes. (Gardner's Mem. in Supp. at 2, 3); *see also* (Hunt. Aff. at 1-5) (describing Wurzinger's cooperation). Gardner also argues that Assured is only mentioned to the extent it "maintained

'loan payoff reports'"; it is not described as an entity with guilty knowledge or fraudulent involvement related to the described transactions, improper payment; or its role in "the co-mingling of funds, secret payments, [] kickbacks, or false appraisals[.]" (*Id.* at 2).

The Hunt Affidavit states that Assured was the construction lender for the Property, and was a party to additional transactions using the same methodology. (Hunt Aff. at 1-3, 1-4). The Hunt Affidavit avers that this methodology constitutes violations of Minnesota and federal law. (*Id.* at 1-3). Thus, because the Hunt Affidavit describes Assured's involvement in the "builder buyout" scheme, it was fairly probable that evidence of this crime may be found on Assured's premises. *See Chrobak*, 289 F.3d at 1046.

Gardner is correct that the Hunt Affidavit does not allege specific facts regarding his personal involvement. Nonetheless, Gardner is the president of Assured, which is both a participant in the scheme and a "control entity" for various other involved entities. (Hunt. Aff. at 1-2). Because Assured is a participant, it is reasonable to infer evidence of its criminal activity may be located with its president, Gardner. "Few places are more convenient than one's residence for use in planning criminal activity and concealing fruits of a crime." *United States v. Hulett*, 22 F.3d 779, 780 (8th Cir. 1994) (citing *United States v. Green*, 634 F.2d 222, 226 (5th Cir. 1981)); *see also United States v. Scott-Kelley*, Crim. No. CR-10-190 (JNE/SRN), 2010 WL 5559758, at *12–13 (D. Minn. Nov. 9, 2010) (finding that defendants' involvement with identity theft operation and confirmation that a certain address was their residence was sufficient to establish probable cause "to believe that a search of [their residence] would uncover evidence of [their] involvement . . . in the described criminal activity."), *adopted by* 2011 WL 70615 (Jan. 10, 2011). Therefore, there was probable cause to establish that evidence of criminal activity would be found in Gardner's residence.

The connection between Gardner and the storage unit is tenuous, albeit sufficient nonetheless. The Government asserts the storage unit is "for corporate records[,]" but the applicable search warrant only identifies it as a storage unit in Gardner's name and in the name of an individual identified as Robert Iten, whose name does not appear in the Hunt Affidavit. *See* (Gov't's Suppl. Resp. at 2 n.1); (Ex. 3). The Court must defer to the issuing judge's determination and reasonable inference that because Gardner is the president of Assured, evidence of Assured's criminal activity may be found in a storage unit rented by its president. *See Smith*, 581 F.3d at 694; *Perry*, 531 F.3d at 665.

Based on the foregoing analysis, the Court finds the Hunt Affidavit contains probable cause to issue search warrants for Assured, Gardner's residence, and Gardner's storage unit. Nevertheless, even if probable cause does not exist, the Court finds the good faith exception applies.

**B.      Good-Faith Exception**

**1.      Legal Standard**

Contested evidence is admissible under the good-faith exception to the exclusionary rule even if probable cause is lacking. *See United States v. Leon,* 468 U.S. 897, 920–22 (1984). "Under the *Leon* good-faith exception, disputed evidence will be admitted if it was objectively reasonable for the officer executing a search warrant to have relied in good faith on the judge's determination that there was probable cause to issue the warrant." *United States v. Hager,* 710 F.3d 830, 837 (8th Cir. 2013) (internal quotation marks omitted). Good-faith reliance is limited, however, and is considered unreasonable in four situations:

(1)      when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge;

7

(2)      when the issuing judge wholly abandoned his judicial role in issuing the warrant;

(3)      when the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence *entirely unreasonable;* and

(4)      when the warrant is so facially deficient that no police officer could reasonably presume the warrant to be valid.

*Perry*, 531 F.3d at 665.

### 2.      Analysis

Gardner argues officers executing the search warrant "cannot claim the benefit of good faith" because the search warrant is "so lacking in probable cause that it [was] objectively unreasonable for any officer to rely upon it" and it was "so facially defective that the officer [could not] reasonably presume it [was] valid." (Gardner's Mem. in Supp. at 4). Gardner's only supporting argument is that "[i]n this case, while the application may not have been so lacking in probable cause with respect to Split Rock entities and their principals, it certainly was so lacking with respect to Mr. Gardner and Assured Financial." (*Id.*).

The Hunt Affidavit describes detailed financial transactions uncovered during an investigation. *See* (Hunt Aff.). It was presented to judicial officers as part of search warrant applications for Assured, Gardner's residence, and Gardner's storage unit. *See* (Exs. 1, 2, 3). The judicial officers signed the search warrants, thereby authorizing the searches. (*Id.*). Gardner does not allege any facts demonstrating that the search warrants were "so lacking in indicia of probable cause" that believing the warrants contained probable cause was "entirely unreasonable," nor does he allege any facts demonstrating that the search warrants were "so facially deficient" that an officer could not "reasonably presume the warrant to be valid." *See Perry*, 531 F.3d at 665; *see also United States v. Rosensteel*, Criminal No. 14-223 (DSD/FLN),

2015 WL 410430, at *7–8 (D. Minn. Jan. 29, 2015) (order adopting Magistrate Judge Franklin L. Noel's report and recommendation reviewing search warrants challenged in a separate case based on the same Hunt Affidavit).[6]

### C.   General Search Warrant

#### 1.   Legal Standard

A search warrant must "particularly" describe "the persons or things to be seized." U.S. Const. amend. IV. A court determines whether this "particularity requirement" is satisfied by looking at "such factors as the purpose for which the warrant was issued, the nature of the items to which it is directed, and the total circumstances surrounding the case." *United States v. Fiorito*, 640 F.3d 338, 346 (8th Cir. 2011) (internal quotation marks omitted). This requirement prevents "a general exploratory rummaging through a person's belongings." *United States v. Hibbard*, 963 F.2d 1100, 1101 (8th Cir. 1992) (citing *Andresen v. Maryland*, 427 U.S. 463, 480 (1976)). "For use involving a scheme to defraud, . . . a search warrant is sufficiently particular in its description of the items to be seized if it is as specific as the circumstances and nature of activity under investigation permit." *United States v. Kail*, 804 F.2d 441, 445 (8th Cir. 1986) (internal quotation marks omitted).

#### 2.   Analysis

Gardner alleges the search warrants lacked particularity because they authorized "the seizure of virtually everything that wasn't a fixture." (Gardner's Mem. in Supp. at 3). Specifically, he argues the search warrants permitted the seizure of items unrelated to Split Rock

---

[6]    *See also* (Gardner's Mem. in Supp. at 5 n.1) (acknowledging that Magistrate Judge Noel found "the executing officers were protected by *Leon*'s good faith exception."); (Gov't's Resp. to Def.'s Pretrial Mots.) [Doc. No. 43 at 1 n.1] (noting that the court denied "identical motions to suppress evidence obtained from searches based on the same underlying affidavit and probable cause.").

Realty, Assured's business records for transactions with "other realtors, builders, and banks[,]" tax and personal bank records belonging to Gardner and his family members, and records related to Gardner's other business entities "for which absolutely no nexus to the alleged scheme was alleged." (*Id.* at 3–4). Therefore, Gardner argues, the search warrants are general warrants prohibited by the Fourth Amendment. (*Id.* at 4).

The search warrants describe the following "property and things":[7] (1) business and personnel records for Assured, Gardner, employees, partners, insurance policies, payroll records, tax information, accounting records, bookkeeping, tax returns, tax schedules, and the source documents for the associated accounting records and tax schedules; (2) loan and mortgage records involving Assured; Argues Homes, LLC; Hennessey Financial, LLC; Heritage Development, LLC; Jag Investment Group; and Plymouth Crossing, LLC; (3) Gardner's "personnel" and business computers; (4) computer equipment, including hardware, software, instructions, and storage devices; (5) permission to perform an off-site analysis of computers and computer-related equipment; (6) banking documents and records, "whether as a sole account holder or jointly with other household members"; and (7) safety deposit keys. (Exs. 1, 2, 3). The Hunt Affidavit also specifies that Gardner is the president of Assured, and Assured, in turn, owns or controls the following entities: Argus Homes, LLC; Hennessey Financial, LLC; Heritage Development, LLC; Jag Investment Group; and Plymouth Crossing, LLC. (Hunt Aff. at 1-2). Most of the other entities mentioned in the search warrant for Assured—Split Rock Realty, Split Rock Title, and Option Plus Realty—are entities that are also alleged to have been participants in

---

[7]   This is a combined list of the items sought in all three search warrants. *See* (Exs. 1, 2, 3). Gardner does not argue that any one search warrant is more or less general than the others, and therefore, the Court need not distinguish the list of items sought in each search warrant.

the fraudulent scheme.[8] *See* (*id.*); (Ex. 2). Thus, the search warrants do not seek all business papers; they seek only documents that are particularly related to the "builder buyout" described in the Hunt Affidavit. *Cf. In re Search of 4801 Fyler Ave.*, 879 F.2d 385, 391 (8th Cir. 1989) ("A search warrant so broad that it allows seizure of all or almost all of the business papers of an entity is constitutionally permissible only if the government can show 'probable cause to believe that fraud permeated the entire business operation.'") (quoting *Kail*, 804 F.2d at 445). Because "fraud, by its nature, entails concealment," the search warrants' description of such a large group of entities controlled or owned by Gardner and/or Assured is "sufficiently particular" because "it is as specific as the circumstances and nature of activity under investigation permit." *United States v. Mathison*, 157 F.3d 541, 549 (8th Cir. 1998); *Kail*, 804 F.3d at 445.

Gardner does not identify any item listed above that is so broadly described as to suggest that the search warrants are general warrants in violation of the Fourth Amendment. The Hunt Affidavit describes a series of financial transactions that are reasonably likely to have been conducted using bank records, computers, and other financial documents. *See generally* (Hunt Aff.). The nature of the activity—fraud—is such that the scheme is likely to be carried out using the items identified in the search warrants.

For the foregoing reasons, the Court finds the search warrants are sufficiently particular under the requirements of the Fourth Amendment. Even if the search warrants were overly broad, the good-faith exception, as described above, cures any such defect. *United States v. Stelten*, 867 F.2d 446, 541 (8th Cir. 1989) ("Even if the evidence had been seized pursuant to overly broad warrants, courts need not exclude evidence seized by law enforcement officers

---

[8]    The only entity to which the Court cannot find a reference in the Hunt Affidavit is 428 Cedar Properties, identified in the Assured search warrant. *See* (Ex. 2). This omission is not so serious as to consider the Assured search warrant a general warrant in violation of the Fourth Amendment. *See Fiorito*, 640 F.3d at 346.

acting in objectively reasonable reliance on a warrant issued by a neutral magistrate.") (citing *Leon*, 468 U.S. at 922).

## IV.  RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant Jeffrey A. Gardner's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Doc. No. 38] be **DENIED**.


Dated: March 19, 2015

*s/Steven E. Rau*
STEVEN E. RAU
United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties by **April 2, 2015**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.