UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 13-CR-0035(1) (PJS/SER) |
| Plaintiff, | |
| v. | ORDER |
| JEFFREY ALLEN GARDNER, | |
| Defendant. | |

Robert M. Lewis and Kimberly A. Svendsen, UNITED STATES ATTORNEY'S OFFICE, for plaintiff.

Lousene M. Hoppe and John W. Lundquist, FREDRIKSON & BYRON, P.A., for defendant Jeffrey Allen Gardner.

Defendant Jeffrey Gardner owned Hennessey Financial, LLC ("Hennessey"), a financing company that made subordinated loans to land-development companies (most of which were also owned by Gardner). Gardner solicited individuals to invest in Hennessey; many of those individuals were unsophisticated and had limited assets. In 2006, Gardner's land-development companies started to fail, and Hennessey began to struggle as those land-development companies defaulted on their loans. By 2008, Hennessey's collapse was complete, and its investors suffered millions of dollars in losses. Some lost their life savings.

Gardner was convicted by a jury of charges of fraud and making false statements in loan applications. The presentence investigation report ("PSR") originally found a

loss amount of nearly $17 million and a tentative restitution amount of $16,626,831.27, including $787,956.58 to the Federal Deposit Insurance Corporation ("FDIC").

At sentencing, Gardner objected to the amount of loss on the ground that almost all of the victims' losses were due not to fraud, but rather to the collapse of the real-estate market in 2006. Gardner conceded that he could be held responsible for amounts that victims invested after Gardner knew (and failed to disclose) that his companies were in dire financial trouble, but Gardner contended that that date was no earlier than March 2, 2007. After an evidentiary hearing, the Court ruled that Gardner's fraudulent failure to disclose his companies' financial condition to prospective investors began no later than July 1, 2006, and that any new money invested by investors on or after that date would be included in calculating the loss amount. The Court sentenced Gardner to a total of 90 months in prison and deferred the issue of restitution.

This matter is before the Court on the government's motion for an order of restitution. The government seeks a total of $4,259,049.66. According to the government, this amount represents the new investments made by victims on or after July 1, 2006, as well as the loss to the FDIC. The names of the victims, and the amount of "new money" that each victim invested on or after July 1, 2006, are set forth in a spreadsheet that was admitted into evidence at the restitution hearing. *See* Gov't Hr'g Ex. 1. The government also offered the testimony of Andria Brutsche, an analyst with

the United States Postal Inspection Service. Brutsche testified that she prepared Exhibit 1 based on underlying bank records from Gardner's companies.

Gardner disputes this amount on several grounds. First, Gardner reasserts his argument that the fraud did not begin until March 2007 at the earliest. The Court has already found, however, that Gardner's fraud began no later than July 1, 2006. ECF No. 280 at 12-14. Anyone who invested new money on or after that date would not have done so if Gardner had truthfully disclosed the financial condition of his companies. As a result, all such investors qualify as victims entitled to restitution. *See* 18 U.S.C. § 3663A(a)(2) (defining "victim" to mean "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered").

Gardner next argues that there is no evidence that the victims listed in Exhibit 1 are in fact investors—that is to say, noteholders—rather than shareholders in the Gardner companies. He suggests that shareholders are not similarly situated to investors because they may have had access to information about the Gardner companies that investors did not have. The evidence does not bear this out, however: Nearly every victim listed in Exhibit 1 also appears on Government Trial Exhibit 150, which is a spreadsheet of Hennessey investors.[1] Setting that aside, there is no evidence

---

[1] The government concedes that, aside from underlying bank records showing that Lancelot Investors Fund PL ("Lancelot) transferred funds to Hennessey, it has no

that shareholders received any more information about the Gardner companies than investors did. To the contrary, Lynna Jacobs-Schauer, one of the shareholders to whom Gardner refers, testified at trial that she was not given material information about Gardner's companies. Trial Tr. 750, 754, 761-62 [ECF No. 204].

Gardner next points to several discrepancies between Exhibit 1 and Government Trial Exhibit 150. As noted, however, the information in Exhibit 1 is derived from underlying bank records and includes only new money invested on or after July 1, 2006. By contrast, Trial Exhibit 150 was prepared by a Hennessey consultant in April 2008 and represents a "snapshot" of the total amount that Hennessey owed each of the investors at that time, including rollover investments. Trial Tr. 807-10 [ECF No. 204]. Given the different purposes for which the documents were prepared—as well as the fact that the government cannot be expected to vouch for the accuracy of a document created by a Hennessey consultant nearly a decade ago—it is not surprising that there are some discrepancies between the two documents. The more salient fact is that the record provides no reason to doubt that Exhibit 1 is an accurate summary of the underlying bank records.[2]

---

evidence about the nature of Lancelot's relationship to Hennessey. The Court therefore sustains Gardner's objection to an award of restitution to Lancelot.

[2]In addition, there is no suggestion in the record that these investment losses were insured or that any victim was able to recoup any amount that he or she lost

(continued...)

Finally, Gardner objects to being ordered to pay restitution to the FDIC. The Court sustained an identical objection by Gardner's codefendant, Stuart Voigt. The government argues, however, that Gardner's objection is untimely because he did not raise it before his sentencing hearing.

Ordinarily, a defendant must raise objections to the PSR before the sentencing hearing. *United States v. May*, 413 F.3d 841, 849 (8th Cir. 2005). In this case, however, the original PSR indicated that its conclusions concerning restitution were not final and that a confidential victim list with exact restitution amounts would be forthcoming. PSR ¶ 117 [ECF No. 233]. No such list was provided to the Court or counsel before sentencing and, as a result, the Court deferred the issue of restitution. Under similar circumstances, the Eighth Circuit has held that, after the government discloses a complete list of victims and claimed restitution amounts, the defendant must be given an opportunity to object. *United States v. Chaika*, 695 F.3d 741, 747-48 (8th Cir. 2012).

The Court therefore treats Gardner's objection as timely. Having done so, the Court sustains Gardner's objection for the same reasons that it sustained Voigt's objection. The FDIC incurred loss after Hennessey defaulted on loans from First

---

[2](...continued)
(except through payments made by Gardner companies, which payments were netted against the losses in Exhibit 1). This case is therefore unlike *United States v. Adejumo*, No. 15-3952, 2017 WL 629291 (8th Cir. Feb. 16, 2017), in which the government's proof of the restitution amount was deemed insufficient because there was testimony that "banks sometimes recover funds which initially appear[] lost by fraud." *Id.* at *2.

Commercial Bank.  Gardner was convicted of making false statements in the applications for those loans.  As the Court explained in detail at Voigt's sentencing hearing, however, the proximate cause of the loss to First Commercial Bank was not Gardner's (or Voigt's) false statements, but instead the bank's failure to perfect its security interest in Hennessey's assets.  That failure was not foreseeable to Voigt or Gardner.  Because Gardner's false statements in his loan applications did not "directly and proximately" harm the bank, *see* 18 U.S.C. § 3663A(a)(2), the Court will not award restitution for that loss.

The Court therefore sustains Gardner's objection to any award of restitution to the FDIC or to Lancelot Investors Fund PL.  The remainder of Gardner's objection is overruled.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. The government's motion for an order of restitution [ECF No. 282] is GRANTED IN PART.

2. Defendant Jeffrey Gardner must pay restitution in the total amount of $3,409,807.59 to the victims and in the amounts listed on Government

        Hearing Exhibit 1, except that no restitution is due to Lancelot Investors Fund PL or the FDIC.

3.     The Court will enter an amended criminal judgment reflecting the restitution award.

Dated: February 21, 2017                 s/Patrick J. Schiltz
                                                    Patrick J. Schiltz
                                                    United States District Judge