UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 13-CR-0035(1) (PJS/SER) |
| | Case No. 17-CV-5481 (PJS) |
| Plaintiff, | |
| v. | ORDER |
| JEFFREY ALLEN GARDNER, | |
| Defendant. | |

Robert M. Lewis and Kimberly A. Svendsen, UNITED STATES ATTORNEY'S OFFICE, for plaintiff.

Jeffrey Allen Gardner, pro se.

Defendant Jeffrey Gardner owned Hennessey Financial, LLC ("Hennessey"), a financing company that made loans to land-development companies (most of which were also owned by Gardner). Gardner solicited individuals to invest in Hennessey; many of those individuals were unsophisticated and had limited assets. In 2006, Gardner's land-development companies started to fail, and Hennessey began to suffer as those land-development companies defaulted on their loans. Gardner nonetheless continued to raise money from investors, without informing them of Hennessey's precarious condition. In 2008, Hennessey collapsed, causing its investors to suffer millions of dollars in losses. Some lost their life savings.

Gardner and a codefendant, Stuart Voigt, were indicted on fraud and other charges. A jury found Gardner guilty of four counts of mail fraud (Counts 1-4), one

count of conspiracy to commit mail fraud (Count 5), four counts of bank fraud (Counts 6-9), and two counts of making a false statement in a loan application (Counts 10 and 12). ECF No. 174. The jury acquitted Gardner of a third count of making a false statement in a loan application (Count 11). *Id.* The Court later granted Gardner's motion for acquittal as to two of his bank-fraud convictions (Counts 8 and 9). ECF No. 227. The Court then sentenced Gardner to a total of 90 months in prison and two years of supervised release. ECF No. 298. The United States Court of Appeals for the Eighth Circuit affirmed Gardner's convictions and sentence on direct appeal. ECF Nos. 299, 300.

This matter is before the Court on Gardner's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.[1] Gardner's motion lists five numbered claims and his memorandum appears to raise several more. With respect to most of Gardner's claims, the record conclusively demonstrates that Gardner is not entitled to relief and thus no response or other proceedings are necessary.[2] *See* Rule 4(b) of the Rules Governing § 2255 Proceedings for the United States District Courts; 28 U.S.C. § 2255(b); *Noe v. United States*, 601 F.3d 784, 792 (8th Cir. 2010). With respect to two of

---

[1]The Court notes that Gardner refers to various exhibits purportedly attached to his motion, but no such exhibits were attached.

[2]A number of these claims are likely also procedurally defaulted. The Court does not rely on that ground in dismissing them, however.

Gardner's claims, however—specifically, his claims of ineffective assistance for failing to present an advice-of-counsel defense and ineffective assistance for advising him not to testify—the Court will order Gardner's trial counsel to file an affidavit and the government to respond to Gardner's claims.

### A. Jury Competence (Grounds One and Two)

Gardner claims that the jury was so confused by the evidence at trial that he was denied a mentally competent tribunal. He further claims that his appellate counsel was ineffective for failing to raise this issue on appeal. To support these claims, he points to (1) comments that the Court made during the trial concerning the complexity of the case and (2) the jurors' questions during deliberations. None of this evidence shows that the jury was mentally incompetent.[3]

---

[3] Gardner does not have direct evidence of the jurors' deliberations or thought processes, but, even if he did, he could not offer that evidence. Under Fed. R. Evid. 606(b), jurors are generally barred from offering testimony or affidavits concerning their deliberations with certain limited exceptions not relevant here. The Supreme Court has recently held that the Constitution requires an exception to this rule for cases in which there is evidence that racial bias infected the jury's deliberations. *See Peña-Rodriguez v. Colorado*, 137 S. Ct. 855 (2017). As Gardner attacks the jury's general competence and does not allege racial bias, Rule 606(b) bars him from offering any juror's testimony to support his claims. *See Tanner v. United States*, 483 U.S. 107, 118 (1987) ("Courts wisely have treated allegations of a juror's inability to hear or comprehend at trial as an internal matter."). Likewise, Gardner cannot offer testimony from any third party about what a juror may have said during deliberations. *See United States v. Caldwell*, 83 F.3d 954, 956 (8th Cir. 1996) (nonjurors cannot testify regarding intrajury communications).

The comments to which Gardner points were made during an argument over an evidentiary issue at the end of the fourth day of trial. ECF No. 204 at 883-91. In the course of the discussion, the Court expressed its opinion that the jury was struggling to follow the case because the evidence was complex. Importantly, however, the Court made these comments while discussing whether to exclude certain evidence under Fed. R. Evid. 403. Rule 403 requires courts to weigh the relevance of evidence against the risk of confusing or misleading the jury. The Court's comments must be understood in that context. The Court was expressing its frustration that the parties were seeking to introduce particularly complex and time-consuming evidence that would have little probative value and that would further complicate an already complicated trial. During long and exhausting trials, judges sometimes use strong language (including hyperbole) to encourage counsel to be more efficient and more cognizant of the demands that they are placing on the jurors. The Court watched the jury carefully during the trial, and the Court never saw evidence that any juror lacked the mental capacity to understand the case. The Court's comments were not intended to imply otherwise.

Gardner also points to the jury's questions during their deliberations as well as their statement that they were "getting nowhere" with respect to some of the charges. ECF No. 186. These things are not evidence of incompetence. To the contrary, they are evidence that the jury was doing exactly what it was supposed to do—grappling with

the evidence and debating with each other. The jurors' care and attention to the case is also reflected in the fact that they acquitted Gardner of one of the three counts of making a false statement in a loan application, a decision that appears to reflect close attention to the evidence and the precise wording of the jury instructions.

The jurors were chosen after a thorough voir dire in which the parties were permitted to participate. No juror or courtroom observer reported any misconduct or other circumstances that would cast doubt on the competence of any juror. The Supreme Court has recognized that these procedures are significant safeguards that protect the defendant's right to an "impartial and competent" jury. *Peña-Rodriguez*, 137 S. Ct. at 866. Under the circumstances, Gardner's evidence that the jury lacked the mental competence to adjudicate his case is insufficient to warrant relief. *See Gander v. FMC Corp.*, 892 F.2d 1373, 1379 (8th Cir. 1990) (mere speculation that the jury's verdict may have been based on a misunderstanding of the law or the evidence is not enough to set aside the verdict); *cf. United States v. Schoppert*, 362 F.3d 451, 459 (8th Cir. 2004) ("A defendant must . . . make some effort to support an allegation of jury taint before an evidentiary hearing or declaration of a mistrial will be appropriate. A bald assertion of taint will not suffice . . . .").

Finally, because Gardner cannot show that the jury was incompetent, he likewise cannot show that his appellate counsel was ineffective for failing to raise this issue. *See*

*Charboneau v. United States*, 702 F.3d 1132, 1136 (8th Cir. 2013) (to establish ineffective assistance of appellate counsel, defendant must show that his appellate counsel's performance was constitutionally deficient and that he was prejudiced by the deficiency).

### B. Grand-Jury Proceedings (Ground Three)

Gardner next claims that his Fifth Amendment rights were violated in one of the following ways: (1) he was never indicted at all, as evidenced by the lack of signatures on the amended second superseding indictment; or, alternatively, (2) the grand jury "rubber stamped" the indictment.[4]

With respect to Gardner's argument that he was never actually indicted: The original, superseding, and second superseding indictments were all signed by the United States Attorney and the grand-jury foreperson. Grand-jury proceedings are presumptively secret, *see United States v. McDougal*, 559 F.3d 837, 840 (8th Cir. 2009), and criminal defendants are not entitled to learn the names or votes of individual grand jurors without a particularized showing that grounds for dismissal might exist, *United States v. TePoel*, 317 F. App'x 549, 551 (7th Cir. 2009). For that reason, the signed versions of these documents are under seal, which is not a violation of Gardner's rights. *See United States v. Reed*, 195 F. App'x 815, 819-20 (10th Cir. 2006).

---

[4] Gardner also contends that he was a victim of selective prosecution; he makes the same claim in Ground Four, which the Court addresses below.

Gardner questions whether there is a signed version of the *amended* second superseding indictment [ECF No. 154]. The answer is that there is not, nor does there need to be. At the January 22, 2016 final pretrial conference, the Court granted the government's motions to dismiss certain counts from the second superseding indictment. ECF Nos. 143, 150, 151. During the hearing, the parties agreed that, to avoid jury confusion, the government could prepare and file an amended second superseding indictment that deleted the dismissed counts and renumbered the remaining counts. ECF No. 151; ECF No. 164 at 9-10.

Gardner thus waived any objection to the amended second superseding indictment. Even if he had not, he would still not be entitled to relief. Courts may strike surplusage from an indictment. *United States v. Ross*, 210 F.3d 916, 922 (8th Cir. 2000). That is what happened here; the amended second superseding indictment is essentially a redacted version of the second superseding indictment that omits surplusage (specifically, the counts that were dismissed). Every count on which Gardner was convicted was part of the second superseding indictment, which was properly returned by the grand jury. Gardner's argument that he was not indicted is therefore meritless.

With respect to Gardner's argument that the grand jury merely acted as a "rubber stamp": There is a strong presumption of regularity to grand-jury proceedings.

*United States v. Fenner*, 600 F.3d 1014, 1021 (8th Cir. 2010). "[A] defendant seeking to overcome that presumption faces a heavy burden." *Id.* (citation and quotations omitted). Gardner's speculation that the grand jury did not properly exercise its independent function is not sufficient. Setting that aside, the petit jury's guilty verdict renders harmless any error in the grand jury's charging decision. *United States v. Wilson*, 565 F.3d 1059, 1070 (8th Cir. 2009). Gardner's claim that there were improprieties in the grand-jury proceedings therefore fails.

### C. Selective Prosecution (Ground Four)

In Ground Four, Gardner raises a claim of selective prosecution, contending that other people involved in the fraudulent scheme should also have been prosecuted. To prevail on a claim of selective prosecution, a defendant must show that (1) he was singled out for prosecution while others similarly situated were not prosecuted; and (2) the decision to prosecute him was "based on an impermissible motive such as race, religion, or an attempt by the defendant to secure other constitutional rights." *United States v. Rodriguez*, 581 F.3d 775, 815 (8th Cir. 2009). Because Gardner does not allege any such impermissible motive, his claim of selective prosecution fails.

### D. Leadership Enhancement

At sentencing, the Court imposed, over Gardner's objection, a two-level leadership enhancement under § 3B1.1(c) of the United States Sentencing Guidelines. In

his memorandum in support of his § 2255 motion, Gardner appears to claim that his trial attorney was ineffective for failing to present additional evidence to defeat this enhancement. Def.'s § 2255 Mem. at 24-25 [ECF No. 303]. In particular, Gardner points to a deposition in a civil case in which the chief financial officer of Gardner's company testified that Gardner did not take an active role in reviewing certain documents. *Id.* Even if this hearsay were somehow admissible, it would not have changed the Court's ruling on the leadership enhancement. As the Court observed at sentencing, the Court had the benefit of an entire trial record that contained ample evidence that Gardner exercised a substantial degree of control over the fraudulent conduct. Gardner therefore cannot show prejudice, which is fatal to his claim. *See Hyles v. United States*, 754 F.3d 530, 533 (8th Cir. 2014).

### E. *Advice of Counsel (Ground Five) and Failure to Testify*

In Ground Five of his motion, Gardner claims that his trial counsel was ineffective for failing to present an advice-of-counsel defense. In addition, although Gardner does not list it as an enumerated ground for relief, his memorandum raises the issue of his counsel's advice not to testify. Def.'s § 2255 Mem. at 20. Having reviewed Gardner's submissions, the Court will order the government to respond to these claims.

Gardner claims ineffective assistance of counsel, and he has put in issue any communications between his counsel and him regarding either an advice-of-counsel

defense or the advisability of his testifying.  Therefore Gardner has waived the attorney-client privilege with respect to these matters.  *See Tasby v. United States*, 504 F.2d 332, 336 (8th Cir. 1974) ("A client has a privilege to keep his conversations with his attorney confidential, but that privilege is waived when a client attacks his attorney's competence in giving legal advice, puts in issue that advice and ascribes a course of action to his attorney that raises the specter of ineffectiveness or incompetence.").  The Court will therefore order Gardner's trial counsel to file an affidavit addressing these claims.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. The motion of Jeffrey Allen Gardner to vacate, set aside, or correct his sentence [ECF No. 302] is DENIED IN PART.  Specifically, the Court denies the following claims with prejudice and on the merits:

    a. Gardner's claim that he received ineffective assistance of appellate counsel because his appellate counsel did not raise the issue of juror incompetence (Ground One);

    b. Gardner's claim that the jury was incompetent (Ground Two);

    c.    Gardner's claim that he was never indicted, or, alternatively, that there were other improprieties in the grand-jury proceedings (Ground Three);

    d.    Gardner's selective-prosecution claim (Ground Four); and

    e.    Gardner's claim that his trial counsel was ineffective for not presenting certain evidence to counter the leadership enhancement under § 3B1.1(c) of the United States Sentencing Guidelines.

2.    With respect to Gardner's remaining claims:

    a.    No later than Friday, April 27, 2018, Gardner's trial counsel, James Ostgard, must file an affidavit (1) summarizing any discussions between Gardner and him concerning an advice-of-counsel defense and concerning whether Gardner should testify and (2) describing the reasons for any advice that Ostgard gave Gardner on these subjects.

    b.    No later than Friday, May 18, 2018, the government must file a response to Gardner's remaining claims.

    c.    If Gardner wishes to file a reply, he must do so no later than Friday, June 8, 2018.

3. The Clerk of Court is directed to mail a copy of this order to attorney James Ostgard.

Dated: April 3, 2018                              s/Patrick J. Schiltz
                                                  Patrick J. Schiltz
                                                  United States District Judge