UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 13-CR-0035(1) (PJS/SER) |
| | Case No. 17-CV-5481 (PJS) |
| Plaintiff, | |
| v. | ORDER |
| JEFFREY ALLEN GARDNER, | |
| Defendant. | |

Robert M. Lewis and Kimberly A. Svendsen, UNITED STATES ATTORNEY'S OFFICE, for plaintiff.

Jeffrey Allen Gardner, pro se.

Defendant Jeffrey Gardner owned Hennessey Financial, LLC ("Hennessey"), a financing company that made loans to land-development companies (most of which were also owned by Gardner). Gardner solicited individuals to invest in Hennessey; many of those individuals were unsophisticated and had limited assets. In 2006, Gardner's land-development companies started to fail, and Hennessey began to suffer significant financial problems as those land-development companies defaulted on their loans. Gardner nonetheless continued to solicit investments in Hennessey, without informing prospective investors of Hennessey's precarious condition. In 2008, Hennessey collapsed, causing its investors to suffer millions of dollars in losses. Some lost their life savings.

Gardner and a codefendant (Stuart Voigt) were indicted on fraud and other charges. A jury found Gardner guilty of four counts of mail fraud (Counts 1-4), one count of conspiracy to commit mail fraud (Count 5), four counts of bank fraud (Counts 6-9), and two counts of making a false statement in a loan application (Counts 10 and 12). ECF No. 174. The jury acquitted Gardner of a third count of making a false statement in a loan application (Count 11). *Id.* The Court later granted Gardner's motion for acquittal as to two of his bank-fraud convictions (Counts 8 and 9). ECF No. 227. The Court then sentenced Gardner to a total of 90 months in prison and two years of supervised release. ECF No. 298. The United States Court of Appeals for the Eighth Circuit affirmed Gardner's convictions and sentence on direct appeal. ECF Nos. 299, 300.

This matter is before the Court on Gardner's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. The Court has already denied relief as to all of Gardner's claims save two: (1) his claim that his trial counsel, James Ostgard, was ineffective for failing to present an advice-of-counsel defense and (2) his claim that Ostgard was ineffective for advising him not to testify at trial. ECF No. 304. With respect to these claims, the Court ordered Ostgard to file an affidavit and the government to file a response. *Id.* at 11. The Court also gave Gardner the opportunity to file a reply, but he did not do so. *Id.*

Having reviewed the additional submissions, the Court finds that the record conclusively demonstrates that Gardner is not entitled to relief on his remaining claims. *See Thomas v. United States*, 737 F.3d 1202, 1207 (8th Cir. 2013) (explaining that affidavits may be submitted and considered as part of the record, including to determine whether an evidentiary hearing is necessary). The Court therefore denies Gardner's § 2255 motion in its entirety.

*A. Standard of Review*

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must establish (1) "that counsel's representation fell below an objective standard of reasonableness" and (2) prejudice, that is, "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Id.* at 689.

*B. Failure to Raise Advice of Counsel Defense*

As noted, Gardner was convicted of mail fraud, conspiracy to commit mail fraud, bank fraud, and making a false statement in a loan application. Gardner's crimes can be grouped into three general categories:

First, Gardner made misrepresentations to his investors concerning Hennessey's financial condition and the uses to which their investments were being put.

Second, Gardner made misrepresentations to First Commercial Bank ("FCB") in his loan applications.

And third, Gardner engaged in what the parties called the "keeper strategy." The keeper strategy involved transferring some of Hennessey's most valuable assets to another entity—the Hennessey Financial Monthly Income Fund ("the Fund")—allegedly for the purpose of putting those assets out of reach of FCB and thereby rendering worthless FCB's security interest in those assets. (This was accomplished by Hennessey granting the Fund a security interest in Hennessey's assets and Gardner later directing the Fund to foreclose on them.) After trial, however, the Court granted Gardner's motion for acquittal on the two counts of bank fraud (Counts 8 and 9) that were premised on the keeper strategy. ECF No. 227 at 5-9.

Gardner contends that his trial counsel was ineffective for failing to present an advice-of-counsel defense. Gardner claims that he relied on the advice of Todd Duckson, whom Gardner characterizes as his "most trusted advisor and the head attorney for all of Gardner's companies and personally except Assured Financial . . . ." Gardner § 2255 Mem. [ECF No. 303] at 25. According to Gardner, Duckson either reviewed or drafted "[e]very document, except the Assured documents . . . ." *Id.* Much

of what Gardner describes in his brief, however, focuses on Duckson's role in the Fund and in formulating the keeper strategy. *See id.* at 26-29. As the Court ultimately acquitted Gardner of the charges associated with the keeper strategy, Gardner cannot show that he was prejudiced by any failure to defend against those charges on the basis of advice of counsel.[1]

More importantly, the record establishes that Ostgard's decision not to make Duckson the focus of a formal advice-of-counsel defense—and not to request an advice-of-counsel instruction—was a strategic decision made after much investigation and consideration.[2] Gardner does not dispute that Ostgard undertook a thorough investigation into the possibility of relying on an advice-of-counsel defense. Ostgard Decl. ¶¶ 4-13. Having conducted that investigation, Ostgard found a number of significant problems with any strategy that would have depended too heavily on Gardner's reliance on Duckson's legal advice. Most significantly, by the time of trial, Duckson had himself been found civilly liable for fraud for his conduct in connection

---

[1] As Ostgard points out, he did argue to the jury that accountants and lawyers on whose expertise Gardner relied devised the keeper strategy and that the purpose of the strategy, and Gardner's overall intent, was to protect his investors. *See, e.g.*, ECF No. 213 at 43-46, 50, 52.

[2] Ostgard did, in fact, contend that Gardner relied on Duckson's guidance in various respects. *See, e.g.*, ECF No. 213 at 55-56. As Ostgard explained in his declaration, this was part of his strategy to show good faith on Gardner's part. In Ostgard's judgment, a formal advice-of-counsel instruction would have undermined that effort. Ostgard Decl. [ECF No. 307] ¶ 23.

with the Fund and had been—and remains—suspended from the practice of law. Ostgard Decl. ¶ 20; *SEC v. Capital Sol. Monthly Income Fund, LP*, 818 F.3d 346 (8th Cir. 2016); *In re Duckson*, 868 N.W.2d 686 (Minn. 2015) (order indefinitely suspending Duckson from the practice of law with no right to petition for reinstatement for five years). In other words, the attorney to whom Gardner would have pointed as his "most trusted advisor" was himself a fraudster.

In addition, Duckson had previously testified under oath that he was *not* involved in Hennessey, did not represent Hennessey, and did not know much about Hennessey. Gardner § 2255 Ex. H at 7-10, 12-14. Thus, Duckson would have difficulty giving testimony helpful to Gardner without admitting that he had previously lied under oath. Needless to say, the jury would be unlikely to credit anything that Duckson had to say.

Moreover, Ostgard also knew that, had he pursued the advice-of-counsel defense, the government would have countered with evidence that Duckson was a coconspirator rather than a competent, independent legal advisor—something that would not have been difficult for the jury to believe, given Duckson's suspension from the practice of law after being found to have committed fraud. Ostgard also knew that Duckson had drafted what, in Ostgard's view, was some of the most misleading language in communications that Gardner had sent to his investors in the summer of

2008. Ostgard Decl. ¶ 20. Indeed, Gardner himself argues, in his § 2255 motion, that he was a victim of selective prosecution because the government did not *prosecute* Duckson. Gardner § 2255 Mem. at 15-23. As Ostgard put it, "[i]t would have been difficult to argue to the jury, after evidence of any of this had been presented, that Mr. Gardner could have relied on advice from such an attorney in good faith." Ostgard Decl. ¶ 20.

There were yet more problems with relying on evidence of Duckson's advice. Duckson had retained criminal-defense counsel and intended to assert his Fifth Amendment privilege against self-incrimination if called to testify. Ostgard Decl. ¶ 21. Shortly before trial, Ostgard obtained a proffer through Duckson's counsel regarding what information Duckson might reveal; Ostgard regarded the information as unhelpful and, in fact, likely to be harmful. Ostgard Decl. ¶ 21. Finally, Ostgard believed that an advice-of-counsel instruction carried the risk of focusing the jury on an analysis that he sought to distract them from—namely, whether Gardner was seeking advice in order to save the company and protect his lenders (as Gardner would now have it) or instead to try to disclose as little as possible about Hennessey's financial condition so that he could continue to raise money (a more likely scenario, given the evidence at trial). Ostgard Decl. ¶ 23.

"[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ." *Strickland*, 466 U.S. at 690. The record establishes that, after thoroughly investigating the possibility of defending the case on the ground that Gardner had relied on Duckson's advice, Ostgard decided (with very good reason) not to pursue a formal advice-of-counsel defense, but rather to focus on evidence of Gardner's lack of fraudulent intent (citing more generalized evidence of Gardner's reliance on his advisors). As this strategy "falls within the wide range of reasonable professional assistance," *id.* at 689, the Court rejects Gardner's claim that Ostgard was ineffective for not pursuing an advice-of-counsel defense.

In relation to his advice-of-counsel claim, Gardner also seems to claim that his appellate counsel was ineffective because she did not appeal the exclusion of certain evidence about things that Duckson did after he took over management of the Fund in the fall of 2008. Gardner § 2255 Mem. at 32; *see* ECF No. 204 at 872, 875, 883-91 (Court's ruling excluding certain evidence).

"The Sixth Amendment does not require that counsel raise every colorable or non-frivolous claim on appeal." *New v. United States*, 652 F.3d 949, 953 (8th Cir. 2011). "'[O]ne of appellate counsel's functions is to winnow the available arguments and exercise judgment about which are most likely to succeed on appeal.'" *Walker v. United States*, 810 F.3d 568, 579 (8th Cir. 2016) (quoting *Gray v. Norman*, 739 F.3d 1113, 1117-18

(8th Cir. 2014)). For that reason, courts are "particularly deferential when reviewing a claim that appellate counsel failed to raise an additional issue on direct appeal." *Charboneau v. United States*, 702 F.3d 1132, 1136 (8th Cir. 2013). "'[A]bsent contrary evidence, we assume that appellate counsel's failure to raise a claim was an exercise of sound appellate strategy.'" *Id.* at 1136-37 (quoting *United States v. Brown*, 528 F.3d 1030, 1033 (8th Cir. 2008)). "'[T]he question here is not whether counsel's choice to omit the argument on appeal was an intelligent or effective decision, but rather whether his decision was an unreasonable one which only an incompetent attorney would adopt.'" *Id.* at 1137 (quoting *Anderson v. United States*, 393 F.3d 749, 754 (8th Cir. 2005)).

Gardner's claim of ineffective assistance of appellate counsel—if he is indeed making such a claim premised on counsel's failure to appeal the Court's ruling excluding certain evidence of Duckson's conduct—fails to clear this high threshold. Gardner's appellate counsel competently raised arguments concerning sufficiency of the evidence and sentencing issues, ECF No. 299, and Gardner provides no evidence that her failure to appeal the exclusionary ruling was anything other than an exercise of sound appellate strategy.

Moreover, any such argument would almost certainly have failed on appeal. The jury had already heard that Duckson had taken over the Fund in the fall of 2008 and thereafter exercised authority over its assets. ECF No. 204 at 872, 875. The Court

excluded evidence of Duckson's later conduct under Fed. R. Evid. 403, ruling that the probative value of such evidence was substantially outweighed by the amount of time it would take and the risk that it would confuse the jury. ECF No. 204 at 890. Such rulings are reviewed for abuse of discretion, and appellate courts give "great deference" to the district court's determinations under Rule 403. *United States v. King*, 898 F.3d 797, 805 (8th Cir. 2018). "The reason for this extremely deferential standard of review is obvious: A Rule 403 ruling—as much as any type of determination made by a district court—depends on factors that are uniquely accessible to the trial judge who is present in the courtroom and uniquely inaccessible to an appellate judge who must take the case on a cold record." *Olson v. Ford Motor Co.*, 481 F.3d 619, 623 (8th Cir. 2007). Gardner's appellate counsel was not ineffective for failing to raise this issue.

### C. Advice Not to Testify

Finally, Gardner appears to take issue with Ostgard's advice that he not testify. According to Gardner, Ostgard "said that he was not going to put me on the stand because [the prosecutor] did not prove that I was guilty, that my case was easily appealable, and that [the prosecutor] would cut a deal if I lost." Gardner § 2255 Mem. at 20. Assuming for the sake of argument that Ostgard's advice constituted ineffective assistance,[3] Gardner cannot show prejudice.

---

[3]Ostgard's account of his discussions with Gardner about whether Gardner
(continued...)

Gardner contends that Ostgard advised him not to testify because Ostgard wanted to protect Duckson, his fellow lawyer.[4] *Id.* ("It appears that Mr. Ostgard fed me to the sharks in order to protect another lawyer."). In other words, it appears to be Gardner's position that Ostgard did not want Gardner to testify because his testimony would have incriminated Duckson. Gardner is not clear about what testimony he would have offered that would have incriminated Duckson, but his brief contains a litany of vague complaints about Duckson, only some of which appear to have anything to do with this case.

The problem with Gardner's claim is that incriminating Duckson—the thing that Gardner criticizes Ostgard for failing to do—would not have helped Gardner. As discussed above, Ostgard struck a wise and careful balance between, on the one hand, suggesting that Gardner relied on Duckson's advice in certain respects and, on the other hand, stopping short of invoking a formal advice-of-counsel defense. Evidence that Duckson himself had committed fraud would have undermined this effort and would not have exonerated Gardner. Gardner does not contend, for example, that Duckson

---

[3](...continued)
should testify differs from Gardner's and, if true, leaves no doubt that Ostgard provided effective assistance of counsel. For purposes of this ruling, however, the Court must credit Gardner's account.

[4]To be clear, there is no hint in the record that Ostgard had any connection to Duckson, nor is there any other evidence that would make this suggestion plausible. In any event, for purposes of the Court's ruling, Ostgard's alleged motive is irrelevant.

-11-

had anything to do with the misrepresentations that Gardner made in his personal financial statements, with the misrepresentations that Gardner made during his meetings with investors, or with Gardner's misuse of investor funds. See Ostgard Decl. ¶ 12 (stating that Gardner told Ostgard that he had never sought advice from Duckson about the contents of the personal financial statements provided to FCB or about what to tell investors during in-person meetings). Moreover, as the Court observed at Gardner's sentencing, the evidence at trial established that Gardner was a hands-on manager who kept himself well-informed about his companies' financial status. Gardner does not contend that he would have testified otherwise (and any such testimony would have been wholly unbelievable). Incriminating Duckson would have done nothing to undermine this evidence and instead would have tended to show that Duckson was a coconspirator. As Gardner cannot show prejudice from his failure to testify,[5] his claim that Ostgard was ineffective for advising him not to testify must fail.

ORDER

Based on the foregoing, on the Court's April 3, 2018 order [ECF No. 304], and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

---

[5]The Court also notes that, having endured Gardner's lengthy defense of his conduct at the four-hour sentencing hearing—a defense that, despite not being subject to cross-examination, was not credible—the Court is confident that Gardner would not have helped himself by testifying.

1. The motion of Jeffrey Allen Gardner to vacate, set aside, or correct his sentence [ECF No. 302] is DENIED.

2. No certificate of appealability will issue.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: October 4, 2018
      s/Patrick J. Schiltz
      Patrick J. Schiltz
      United States District Judge